UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL THREET,

    Plaintiff,                                        Civil Action No. 14-cv-13345

vs.                                            HON. BERNARD A. FRIEDMAN

D. PHILLIPS, et al.,

    Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

and

**ORDER TO SHOW CAUSE WHY THE CLAIMS AGAINST THE UNKNOWN
DEFENDANTS SHOULD NOT BE DISMISSED**

This matter is presently before the Court on defendants' motion to dismiss [docket entry 33]. Plaintiff has filed a response in opposition [docket entry 35] and a supplemental brief in support of plaintiff's response in opposition to defendants' motion to dismiss [docket entry 41]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion on the briefs. For the following reasons, the Court shall grant the motion in part and deny it in part.

**I. Background**

Plaintiff is a pro se prisoner who is currently confined at the Saginaw Correctional Facility in Freeland, Michigan. On August 26, 2014, plaintiff filed the instant action pursuant to 42 U.S.C. § 1983, alleging various constitutional violations while incarcerated at the Parnall Correctional Facility ("SMT") in Jackson, Michigan. Plaintiff alleges that from January to February 2014, defendants Deputy Warden Kenneth Ryan, Clinical Social Worker Noah Bruner, Inspector Lester Parish, Lieutenant John Hurst, Sergeants Erick Vandenburg and Dawn Jacobson, Corrections

Officers David Phillips, James Richardson, Wesley Jackson, and James Miller, and John and Jane Doe nurses and x-ray technicians, were deliberately indifferent to his health and safety in violation of his Eighth Amendment rights.

The relevant events occurred following an assault perpetrated by a prisoner named Grey on another inmate. Plaintiff alleges that after this assault, Vandenburg approached plaintiff and his religious group to discuss whether Grey would be assaulted in retaliation. Compl. ¶¶ 1-2. Plaintiff and his religious group assured Vandenburg that they would not harm Grey. *Id.* A few days later, a member of a gang informed plaintiff that Grey was going to be assaulted for an unrelated issue. *Id.* ¶ 3. Fearing that he and his religious group would be blamed for the planned attack on Grey, plaintiff attempted to warn Vandenburg of the assault but was stopped by Miller, Jackson, and Jacobson. *Id.* ¶¶ 3-7.

Plaintiff alleges that as a result of attempting to warn SMT employees of the impending attack on Grey, he was subjected to various forms of harassment. Specifically, he claims that (1) Richardson and Jackson searched his cell two to three times per day, wrote him misconduct reports, and confiscated his property; (2) Jacobson coerced him to perform work in violation of his medical detail; (3) Jacobson threatened to transfer him when he did not sign off on a grievance; (4) Phillips slammed his left hand in a cell door; (5) John and Jane Doe nurses would not notify authorities that he had been assaulted by Phillips; (6) John and Jane Doe x-ray technicians would not show him his x-rays; (7) Hurst, Bruner, and Vandenburg failed to stop the harassment; and (8) Ryan and Parish would not allow him to use the telephone to call the Michigan State Police. *See id.* ¶¶ 14, 16-19, 21-25, 27-28, 30, 32-34, 40-41. Plaintiff asserts Eighth Amendment claims, as well as state law claims of gross negligence and intentional infliction of emotional distress, against all

2

defendants. *See* Compl., Counts I-XIII. Plaintiff also asserts First Amendment retaliation claims against Richardson, Jackson, and Jacobson. *Id.*, Counts II-IV. For relief, plaintiff seeks damages and a declaratory judgment that his constitutional rights were violated. *See id.*, p.13. Defendants seek dismissal of all claims due to plaintiff's failure to exhaust his administrative remedies.

## II.  Legal Standards

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), provides that a prisoner bringing an action with respect to prison conditions under § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 519-20 (2002). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

The exhaustion "requirement is mandatory but not jurisdictional, and applies to all federal claims seeking redress for prison circumstances or occurrences regardless of the type of relief being sought." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (citing *Porter*, 534 U.S. at 532). "[I]nmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee*, 789 F.3d at 677 (citing *Jones*, 549 U.S. at 216). "However, when faced with a motion to dismiss or a motion for summary judgment based on a failure to exhaust, a prisoner cannot just sit on his laurels, but must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808,

3

2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014). A dismissal for failure to exhaust is without prejudice. *Boyd v. Corrs. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006) (citing *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000)).

The instant motion was filed as an unenumerated Rule 12(b) motion, which plaintiff argues is "improperly filed" because defendants never specified "which subdivision they were applying to their request for dismissal." *See* Pl.'s Resp. to Defs.' Mot. to Dismiss ¶ 2. Courts have differed in determining which subdivision applies to a motion to dismiss based on failure to exhaust administrative remedies. This issue was summarized in Magistrate Judge Whalen's Report & Recommendation that was adopted in *Twohig v. Riley*, No.12-11832, 2013 WL 3773365, at *1 (E.D. Mich. July 17, 2013):

> There has been a divergence of viewpoints as to the correct procedural basis for a dismissal premised on non-exhaustion. In *Jones v. Bock*, 127 S.Ct. at 921, the Supreme Court suggested in dicta that failure to exhaust might be a basis for dismissal under Rule 12(b)(6). However, in *Pointe v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007), the Sixth Circuit found that a dismissal based on exhaustion may be distinct from a dismissal for failure to state a claim upon which relief may be granted. *See also Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999) (concluding that failure to state a claim as used in 1997e(c) and 1915(g) does not include failure to exhaust administrative remedies). In *Melton v. Michigan Corrections Commission*, 2009 WL 722688 (E.D. Mich 2009), the Court granted a motion for summary judgment, dismissing the complaint without prejudice for failure to exhaust . . .
> In the context of the PLRA, a plaintiff's failure to exhaust administrative remedies does not seem to fit within Fed. R. Civ. P. 12(b)(6). After *Jones v. Bock*, failure to exhaust is not a pleading requirement, so there is no determination of whether a plaintiff has stated a claim on the face of the complaint. And unlike the typical 12(b)(6) motion, dismissal is without prejudice. Rule 12(b)(1) (subject-matter jurisdiction) clearly does not apply, since "the PLRA exhaustion requirement is not jurisdictional." *Woodford v. Ngo*, 548 U.S. 81, 101 (2006). Summary judgment seems inapposite since there is no determination of the merits of the case, and "judgment" is

> not entered. *See Studio Electrical Technicians Local 728 v. International Photographers of Motion Picture Industries, Local 659*, 598 F.2d 551, 552 (9th Cir. 1979) ("Summary judgment is on the merits," and failure to exhaust, as a matter in abatement, "ordinarily" does "not deal with the merits.") . . .

Citing the decisions of other circuit courts for support, Magistrate Judge Whalen concluded that the best approach is to treat a motion to dismiss based on a failure to exhaust as an unenumerated Rule 12(b) motion. Finding this method to be the best course as well, the Court is persuaded that defendants' unenumerated Rule 12(b) motion was appropriately filed.

### III. Analysis

In order to exhaust administrative remedies, "prisoners must complete the administrative review process in accordance with the applicable procedural rules[,] . . . rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. An improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement. *Woodford*, 548 US at 97. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Michigan Department of Corrections ("MDOC") policy requires prisoners to follow a three-step process to exhaust grievances. *See* Defs.' Mot. to Dismiss, Ex. A, Policy Directive 03.02.130 (effective 07/09/2007). A prisoner must first "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control[.]" *Id.* ¶ P. If the issue is not resolved to the prisoner's satisfaction, he must then file a Step I grievance within five business days after attempting

to resolve the issue with appropriate staff. *Id.* ¶ P. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must file a Step II grievance. *Id.* ¶ BB. Finally, if the prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must file a Step III grievance. *Id.* ¶ FF. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* ¶ S.

MDOC policy also states that "[i]nformation provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* ¶ R (emphasis in original). Grievances may be rejected if they are vague, duplicative of issues raised in other grievances filed by the grievant, or untimely. *Id.* ¶ G. However, a "grievance shall not be rejected if there is a valid reason for the delay, e.g., transfer." *Id.* ¶ G.4.

Defendants have submitted as an exhibit to their motion a printout entitled "MDOC Prisoner Step III Grievance Report" ("MDOC Report"), which appears to have been generated on September 22, 2014. *See* Defs.' Mot. to Dismiss, Ex. B, Pg ID 236-38. This report indicates that plaintiff filed eight Step III grievances while incarcerated at SMT. *See id.* Seven of these grievances were rejected at Step I for being vague, duplicative, untimely, or non-grievable. As for the remaining grievance–SMT-14-03-0460-17Z filed against Bruner for failing to help plaintiff report the Phillips assault–both sides agree this claim has been properly exhausted, so the Court will assume the same. *See* Defs.' Mot. to Dismiss, p.10 ("It would appear that Threet properly exhausted his administrative remedies as to [SMT-14-03-0460-17Z]."). The Court will examine each of the

6

eight grievances, as well as the two additional grievances that plaintiff appears to argue were also properly exhausted.

## A. Grievances Rejected as Untimely

Plaintiff filed a Step I grievance in SMT-14-03-0461-28e on March 1, 2014, against Hurst for refusing to listen to plaintiff's complaints about being harassed and threatened by unnamed officers. *See id.*, Ex. B, Pg ID 247. Plaintiff listed the "Date of Incident" as February 5, 2014. *Id.* Recognizing that his grievance was untimely, plaintiff noted that his "grievance is late due to threats by staff, denial of grievance forms and access to law library, was also transfered [sic] to protect staff." *Id.* The Step I grievance was rejected as untimely and informed plaintiff that he had "**not provided any reasonable circumstance beyond [his] control that would have prevented [him] from filing this grievance in a timely manner.**" *See id.*, Pg ID 248 (emphasis in original). Plaintiff filed a Step II appeal wherein he noted that he "clearly stated several 'reasonable circumstances' for [his] lateness (see step I)[.]" *Id.*, Pg ID 245. The Step II response affirmed the Step I response that the grievance was untimely and that plaintiff failed to provide any reasonable circumstance beyond his control that would have prevented him from filing a grievance in a timely manner. *See id.*, Pg ID 241. In his Step III appeal, plaintiff stated that he was appealing because "deliberate indefferance [sic] cover up of corruption which is blatently [sic] obvious." *Id.*, Pg ID 245. The Step II decision was upheld at Step III. *See id.*, Pg ID 244.

Similarly, plaintiff filed a Step I grievance in SMT-14-03-0455-28e on March 1, 2014, against Phillips for retaliating against him by removing personal items from his cell without issuing a "written N.O.I[.] or contraband removal." *Id.*, Pg ID 266. Plaintiff listed the "Date of Incident" as February 8, 2014. *Id.* Plaintiff noted in this grievance, too, that his "grievance is late

7

due to harrassing [sic], threatening, assaultive behavior of officers in 10 blk, being denied grievance forms, access to law library, and transfer to new facility." *Id.* The Step I response was rejected as untimely and informed plaintiff that he had "**not provided any reasonable circumstance beyond [his] control that would have prevented [him] from filing this grievance in a timely manner.**" *Id.*, Pg ID 267 (emphasis in original). Plaintiff filed a Step II appeal wherein he noted that he "clearly stated several 'reasonable circumstances' that were out of my control (see step 1)." *Id.*, Pg ID 264. The Step II response affirmed the Step I response that plaintiff had failed to provide any reasonable circumstance for his untimely grievance. *See id.*, Pg ID 265. In his Step III appeal, plaintiff stated that he believes "being threatend [sic] and assaulted are very reasonable circumstances for fearing to write complaints while still on the same compound as the officers in question." *Id.*, Pg ID 264. The Step II decision was upheld at Step III. *See id.*, Pg ID 263.

Defendants argue that plaintiff's claims as to Hurst and Phillips must be dismissed because plaintiff's untimely–and therefore improperly–filed grievances, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA's exhaustion requirement. *See Woodford*, 548 US at 97. In response, plaintiff argues that his transfer to a new facility on February 28, 2014, prevented him from timely filing his Step I grievances. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss ¶ 14. The Step I, II, and III responses for both grievances stated that plaintiff had failed to provide *any* reasonable circumstance for his untimely grievance, but this contention is inaccurate. Plaintiff stated that he was (1) afraid to file grievances against officers on his block for fear of retaliation; (2) denied access to the law library; (3) denied grievance forms; and (4) transferred to a new facility. These facts could have provided a valid explanation for any delay in filing SMT-14-03-0461-28e and SMT-14-03-0455-28e, had they been appropriately considered. *See, e.g., Coleman*

8

*v. Gullet*, 2013 WL 2634581, at *11 (E.D. Mich. June 10, 2013) (finding plaintiff's transfer was conceivably a valid reason for the delay in appealing a grievance). In resolving all reasonable inferences in favor of plaintiff, as must be done at the motion to dismiss stage, the Court cannot conclude that plaintiff failed to exhaust his grievances against Hurst and Phillips.

## B. Grievances Rejected as Vague

Plaintiff filed three grievances that were rejected as vague. First, plaintiff filed a Step I grievance in SMT-14-03-0513-28b against Vandenburg for failing to protect plaintiff from the other officers. *See* Defs.' Mot. to Dismiss, Ex. B, Pg ID 252-53. The Step I grievance was rejected as vague, stating "you did not provide the name of the staff that you claim are harassing and threatening you." *Id.*, Pg ID 253. Plaintiff appealed this grievance to Step II, arguing that he did not need to provide the name of the staff members because he was grieving Vandenburg, not the staff members threatening him. *See id.*, Pg ID 250. The Step II response affirmed the Step I response. *See id.*, Pg ID 251. Plaintiff filed a Step III appeal, stating "deliberate indifferance [sic] corruption and cover up" as the reason for his appeal. *See id.*, Pg ID 250. The Step II decision was upheld at Step III. *See id.*, Pg ID 249.

Defendants argue that plaintiff improperly exhausted his administrative remedies because, in filing a grievance that was vague, he did not comply with the MDOC's procedural rules. *See, e.g., Woodford*, 548 U.S. at 90; *Colston v. Cramer*, 2007 WL 1655413, at *2 (E.D. Mich. June 7, 2007). The Court agrees. MDOC policy states that "[d]ates, times, places, *and names of all those involved* in the issue being grieved *are to be included*. *See* Defs.' Mot. to Dismiss, Ex. A, Policy Directive 03.02.130 (effective 07/09/2007) ¶ R (emphasis added). Despite plaintiff's contention to the contrary, plaintiff was required to provide the names of all those involved and he failed to do so.

9

The claim against Vandenburg is therefore dismissed for failure to properly exhaust administrative remedies.

Plaintiff also filed a Step I grievance in SMT-14-03-0459-28b against unknown staff members at Duane L. Waters Hospital in Jackson, Michigan, for their refusal to report to administration that he was assaulted by an officer. *See* Defs.' Mot. to Dismiss, Ex. B, Pg ID 242. The Step I grievance was rejected as vague, stating that plaintiff failed to "provide the name of the staff that [he] claim[s] refused to report [his] claim." *See id.*, Pg ID 243. Plaintiff filed a Step II appeal wherein he stated that he "asked for names and copies of all paperwork," but was "denied" and that the "grievance coordinator should have . . . looked that information up as I clearly stated in step I that that information was denied me." *Id.*, Pg ID 240. The Step II response affirmed the Step I response, indicating that "[y]ou need to include **who**, what, when, where and be specific." *Id.*, Pg ID 246 (emphasis in original). Plaintiff appealed this decision to Step III, wherein he simply stated that the reason for his appeal was "[d]eliberate indifferance [sic] see step I & II." *Id.*, Pg ID 240. The Step II decision was upheld at Step III. *See id.*, Pg ID 239.

Grievance number SMT-14-03-0458-28b, which also grieved unknown "medical staff" for refusing to report that plaintiff was assaulted, was also rejected at Step I as vague. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, Pg ID 300-01. The Step I response stated that plaintiff "did not provide the name of the staff that [he] claim[s] refused to report [his] claim." *Id.*, Pg ID 301. Plaintiff appealed the Step I response to Step II, arguing that he asked for the names of the staff members but was denied this information. Defs.' Mot. to Dismiss, Ex. B, Pg ID 255. The Step II response affirmed the Step I response. *See id.*, Pg ID 256. Plaintiff appealed the response to Step III, where the prior decisions were upheld. *See id.*, Pg ID 254.

10

Defendants argue that SMT-14-03-0459-28b and SMT-14-03-0458-28b were not properly exhausted because they failed to include the name of the person being grieved. Plaintiff acknowledges that MDOC procedure requires grievants to include this information, but argues that the staff members at Duane L. Waters Hospital refused to provide their names and that "every attempt (even [as of May 2015]) to obtain copies of the medical reports, and thereby discover their names has been denied," thereby preventing him from properly exhausting his administrative remedies. Pl.'s Resp. to Defs.' Mot. to Dismiss ¶ 11. When a prisoner is unable to exhaust all available remedies because prison officials have thwarted the inmate's attempts at exhaustion, then proper exhaustion should be assumed. *See Brock v. Kenton Cnty.*, 93 F. App'x 793, 798 (6th Cir. 2004). Thus, drawing all inferences in favor of plaintiff, the Court will assume, for purposes of this motion, that prison officials thwarted plaintiff's attempt to properly exhaust his administrative remedies by withholding critical information.

However, an inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought, and he must give each defendant notice of the action by serving upon him a summons and copy of the complaint. *See Feliciano v. DuBois*, 846 F. Supp. 1033, 1048 (D. Mass. 1994). In general, "the use of unnamed defendants is not favored in the federal courts." *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1093 (W.D. Mich. 2001). "Where a plaintiff is proceeding [in forma pauperis], the district court bears the responsibility for issuing the plaintiff's process to a United States Marshal who must effect service upon the defendants once the plaintiff has properly identified the defendants in the complaint." *Williams v. McLemore*, 10 F. App'x 241, 243 (6th Cir. 2001) (citing Fed. R. Civ. P. 4(c)([3]); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)). Under Rule 4(m), defendants must be served within 120 days of filing the complaint.

11

If defendants are not served during this time, "the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Plaintiff has apparently failed to identify or serve the John and Jane Doe defendants and this case has been pending for well over 120 days (since August 26, 2014). In accordance with Rule 4(m), this Opinion and Order shall serve as notice to plaintiff that he has 14 days to show cause why the claims as to the John and Jane Doe defendants should not be dismissed without prejudice.

## C. Grievance Rejected as Non-Grievable

Plaintiff filed a Step I grievance in SMT-14-03-0463-27a against Richardson for writing him a major ticket in retaliation for attempting to call the Michigan State Police. *See* Defs.' Mot. to Dismiss, Ex. B, Pg ID 261. The Step I grievance was rejected as non-grievable, stating that "[d]ecisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules, and decisions made in class II or III hearings, including property disposition, and **issues directly related to the hearing process are non grievable. Your avenue of redress is through the appeals process**." *Id.*, Pg ID 262 (emphasis in original). In his Step II appeal, plaintiff argued that he was not grieving that he was found guilty of the ticket, but was grieving that he was given the ticket in retaliation for attempting to report the assault by Phillips to the Michigan State Police. *See id.*, Pg ID 259. The Step II response affirmed that plaintiff had grieved a non-grievable issue. *See id.*, Pg ID 260. Plaintiff filed a Step III appeal, which affirmed the Step I and Step II responses. *See id.*, Pg ID 258-59.

While defendants argue that grievance SMT-14-030463-27a was procedurally defaulted, and hence not properly exhausted, the Court disagrees because this grievance was not

contesting the outcome of a misconduct hearing. The grievance asserted that Richardson wrote plaintiff a misconduct ticket in retaliation for attempting to contact the Michigan State Police. By rejecting plaintiff's grievance for a reason clearly unsupported by the facts presented in the grievance, prison officials effectively prevented plaintiff from properly exhausting his administrative remedies. Under these circumstances, the Court cannot conclude that plaintiff has failed to exhaust his administrative remedies as to his First Amendment retaliation claim against Richardson.

**D. Grievance Rejected as Duplicative**

Plaintiff filed a Step I grievance in SMT-14-03-0457-28a, indicating that after the assault, plaintiff asked Phillips for medical treatment for his hand, but instead of helping, Phillips called him a "whinney [sic] bitch" and walked away. *See* Defs.' Mot. to Dismiss, Ex. B., Pg ID 271, 269. This grievance was rejected as being duplicative of SMT-14-03-0456-26z, which was pending at the time of the Step I response. *See id.*, Pg ID 272. Plaintiff filed a Step II appeal, arguing that SMT-14-03-0456-26z complained about Phillips assaulting him, whereas the instant grievance complained about Phillips refusing to assist him in obtaining medical treatment. *See id.*, Pg ID 269. The Step II response affirmed that both grievances were duplicative because they "both address the claim that Officer Phillips assaulted you." *Id.*, Pg ID 270. Plaintiff filed a Step III appeal arguing "reguardless [sic] of me 'mentioning' the assault I am grieving the fact that when I asked for medical attention affter [sic] being assaulted, the officer who assaulted me called me a whiney [b]itch and walked away." *Id.*, Pg ID 269. The Step II decision was upheld at Step III. *See id.*, Pg ID 268.

Although SMT-14-03-0457-28a and SMT-14-03-0456-26z arise from the same assault, each grievance complains of a separate issue. SMT-14-03-0456-26z deals with the actual

13

assault and exhausts plaintiff's excessive force claim against Phillips. However, SMT-14-03-0457-28a deals with Phillips' alleged failure to provide plaintiff medical treatment, thereby exhausting plaintiff's deliberate indifference claim against Phillips. By rejecting plaintiff's grievance for a reason unsupported by the facts presented in each grievance, prison officials effectively prevented plaintiff from properly exhausting his administrative remedies. Under these circumstances, the Court cannot conclude that plaintiff failed to exhaust his administrative remedies as to this claim against Phillips.

**E.  Remaining Grievances**

In addition to the eight grievances cited by defendants, plaintiff appears to suggest that he properly exhausted his administrative remedies as to two other grievances. In SMT-14-03-0456-26z, plaintiff grieved that Phillips assaulted him by slamming his left hand in a cell door. *See* Pl.'s Resp. to Mot. to Dismiss, Ex. B, Pg ID 296. The Step I response stated that an investigation into the assault was being done but that "[n]o violations of staff misconduct are noted as related to the reporting and investigation of the Grievant's allegations." Pl.'s Resp. to Mot. for Summ. J., Pg ID 149. Plaintiff filed a Step II appeal, grieving that he has "little faith in this so called investigation as it took 31 days befor [sic] I was even asked any questions, and to the best of my knowledge Officer Phillips has not been fired, suspended pending outcome[.]" *Id.*, Pg ID 147. The Step II response reiterated that the assault was being "formally investigated" and denied plaintiff's Step II appeal. *See id.*, Pg ID 148. And although the "MDOC Prisoner Step III Grievance Report" does not show that plaintiff filed a Step III appeal in this matter, plaintiff included a copy of the Step III appeal in his initial response to defendants' motion for summary judgment. *See id.*, Pg ID 147. The MDOC Report does, however, include a notation stating that on July 22, 2014, MDOC returned the

14

Step III appeal to plaintiff "requesting Step I & II documents." Defs.' Mot. to Dismiss, Ex. B, Pg ID 236. Given the inconsistency in the record, it is unclear whether the Step III appeal has been accepted or decided. However, drawing all inferences in favor of plaintiff, the Court will assume for purposes of this motion that plaintiff has properly exhausted his grievance remedies as to his excessive force claim against Phillips.

Finally, plaintiff filed a Step I grievance in SMT-14-03-0462-17z against Jacobson claiming that she failed to intervene to help plaintiff and that she retaliated against plaintiff by threatening to transfer him to an undesirable prison facility. *See* Pl.'s Resp. to Mot. to Dismiss, Ex. B, Pg ID 313. The Step I response concluded that the allegations in the grievance could not be substantiated. *See id.*, Pg ID 314. It appears that plaintiff did not file a Step II or III appeal in this matter because he has not included any documents or exhibits suggesting otherwise. This would appear to be consistent with the MDOC's Report, which does not list a Step III appeal in this matter. Defs.' Mot. to Dismiss, Ex. B, Pg ID 236-38. Because "a prisoner cannot just sit on his laurels, but must offer competent and specific evidence showing that he indeed exhausted his remedies," *Sango*, 2014 WL 8186701, at *5, and plaintiff has failed to provide such specific evidence, the claims against Jacobson are dismissed without prejudice for failure to exhaust administrative remedies.

## IV.  Conclusion

Plaintiff properly exhausted six of the ten aforementioned grievances. These grievances include SMT-14-03-0461-28e against Hurst, SMT-14-03-0463-27a against Richardson, SMT-14-03-0460-17Z against Bruner, and SMT-14-03-0456-26z (assault), SMT-14-03-0455-28e (retaliatory cell searches), and SMT-14-03-0457-28a (deliberate indifference) against Phillips. However, the grievances against Vandenburg (SMT-14-03-0513-28b) and Jacobson (SMT-14-03-

15

0462-17z ) were not properly exhausted and are therefore dismissed without prejudice. Further, because none of these ten grievances complained about the actions of Jackson, Miller, Parish, or Ryan, all claims against these defendants are dismissed without prejudice for failing to exhaust administrative remedies. Accordingly,

IT IS ORDERED that defendants' motion to dismiss [docket entry 33] is granted without prejudice as to all claims against Vandenburg, Jacobson, Jackson, Miller, Parish, and Ryan.

IT IS FURTHER ORDERED that defendants' motion to dismiss is denied as to the claims against Phillips, Richardson, Hurst, and Bruner.

IT IS FURTHER ORDERED that plaintiff has 14 days to show cause why the claims against the John and Jane Doe defendants should not be dismissed without prejudice.

                                          S/Bernard A. Friedman
                                          BERNARD A. FRIEDMAN
                                          SENIOR UNITED STATES DISTRICT JUDGE

Dated: February 1, 2016
       Detroit, Michigan